UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

———————————————————————————————

PAUL S. TURLEY,

                                    Plaintiff,

v.                                                        DECISION AND ORDER

HAROLD D. GRAHAM, Superintendent of the                  6:17-cv-06379 (CJS)
Auburn Correctional Facility,

                                    Defendant.

———————————————————————————————

## INTRODUCTION

The petitioner, Paul S. Turley ("Petitioner"), brings this *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his convictions in New York State Supreme Court, Niagara County, for first and second degree course of sexual conduct against a child, and first and second-degree sexual abuse, for which he was sentenced to prison for an aggregate term of 15 to 30 years (the "Petition"). Pet., June 15, 2017, ECF No. 1. The Petition asserts five claims. Pursuant to Rule 8 of the Rules Governing Habeas Corpus Cases Under § 2254 in the United States District Courts, and upon a review of the petition, answer, transcript and record, the Court determines that an evidentiary hearing is not required. For the reasons explained below, the petition for writ of habeas corpus [ECF No. 1] is denied.

## BACKGROUND

### Underlying Crime and Trial

Between 1996 and 1998, Petitioner's stepdaughter, J.M.[1], and niece, A.S., were subject to various acts of sexual abuse at the hands of Petitioner.  According to J.M., Petitioner began abusing her around the age of five and continued the abuse until she was about thirteen years old.  Trial Tr.

---

[1] Pursuant to New York Civil Rights Law § 50-b, the victims will be identified by their initials to protect their privacy.

at 568.  She testified that Petitioner would touch her with his hand and mouth on her vagina and anus, put his fingers into her vagina and anus, rub his penis over her vagina, and would put his penis into her mouth.  *See id.* at 569–571.  According to J.M., this conduct occurred once or twice a week; "whenever [Petitioner] had the opportunity."  *Id.* at 571.

J.M. testified that Petitioner warned her that if she told anyone about the abuse the police would take Petitioner away and the family would not "have a home or food, and [J.M.'s] mother would hate [her]."[2]  *Id.* at 573.  She felt "scared and confused," and wondered whether the abuse was her fault.  *Id.* at 572-73.

A.S. testified that while at her grandparents' house for holidays, specifically, between 1996 and 1998, Petitioner would ask her if she wanted to have a "special tickle fight."  A.S. describes it as a "normal tickle fight" as one would have with little kids, but would result in Petitioner moving his hand up the inside of her thigh to her vagina.  *Id.* at 465–66.  According to A.S., Petitioner told her not to tell anyone about their "special tickle fights" and she complied.  *Id.* at 467–68.  A.S. also testified she recalls that on December 25, 2003—the first Christmas after her grandfather passed away—Petitioner sat next to her on the couch at her grandparent's home, forcibly held her shoulder when she tried to move away, leaving bruises, and moved his hand up her thigh and rested it on her pubic area.  *Id.* at 473–74.  Again, A.S. did not tell anyone what happened.  *Id.* at 474–75.

Eventually, in July of 2007, J.M. told her sister, Rochelle Webber, that Petitioner sexually abused her.  *Id.* at 499–500.  Rochelle did not report the abuse to anyone but told J.M. that when she was ready to report the abuse, Rochelle would support her "one hundred percent."  *Id.* at 500.  In November of 2011, J.M. discussed the situation with her other sister, Holly Gullo.  *Id.* at 387–

---

[2] Indeed, since J.M. reported the abuse, J.M. and her mother no longer have a relationship.  Trial Tr. at 586–87.

88.  Holly describes J.M. as being quiet, fearful, and crying when she discussed the abuse.  *Id.* at 388.  J.M. was nervous-looking, fidgeting, and seemed to Holly, to be in shock.  *Id.*  About a week or so later, J.M. contacted Holly and told her that she made the decision to report the abuse to the police.  *Id.* at 389.  J.M. then reached out to Rochelle and her uncle—A.S.'s father—and requested to meet with the family.  *Id.* at 516–17.  She then told her family what Petitioner had done and that she wanted to make a police report.  *Id.* at 517.  Police were called, and Officer Robert Cinquino arrived and conducted interviews with J.M., A.S., and other members of the family.  *Id.* at 378–80.  Officer Cinquino testified that it was emotional in the home and that he could feel "a sense of relief that [the victims] were finally getting [the abuse] out and they weren't alone."  *Id.* at 370–80.

Shortly thereafter, J.M. called Petitioner and recorded the call using a hand-held voice recorder.  *Id.* at 579–81.  During the call, when confronted with the abuse, Petitioner stated he was sorry and that he "didn't want to hurt [J.M.]."  SR[3] 45, 46.  He stated that "in [his] misguided mind, the things that [they] were doing together were not bad," and later stated that he thought "it was something that [she] wanted," that he "loved [J.M.] and had a very weird way of showing it."  SR 47, 52.  Petitioner further explained to J.M. that she was not responsible, that he felt bad about what happened, and that he knew it was wrong.  SR. 53.  When J.M. expressed concern that Petitioner would tell her that she was crazy, Petitioner replied that she was "not crazy and what [he] did was wrong and it's something [that he] regret[s] and [he] wasn't trying to hurt [her].  [He] wasn't trying to force [her] into anything.  Whenever [she] told [him] to stop [he] would stop." SR 55.  However, he also denied J.M.'s assertions that he put his fingers inside of her and put his penis into her mouth.  SR 44, 45.  The call was played for the jury at trial.  *See* Trial Tr. at 585.

---

[3] State Court Record

After trial, the jury found Petitioner guilty of first- and second-degree course of sexual conduct against a child and first-degree sexual abuse. *Id.* at 725. Petitioner was sentenced to consecutive prison terms of from 8-and-one-third years to 25 years for the first-degree course of sexual conduct against a child, 2-and-one-third years to 7 years for second-degree course of sexual conduct against a child, and 7 years followed by 3 years of post-release supervision for first-degree sexual abuse. *See* May 10, 2013 Hr'g Tr. at 21–22. Petitioner was then re-sentenced to 12 $^1/_2$ to 25 years on the first-degree sexual conduct against a child charge, and 3 and one-half to 7 years on the second-degree sexual conduct against a child charge, after the court received a letter from the Department of Corrections and Community Supervision that the original sentences were impermissible under the sentencing statute. *See* Mar. 28, 2014 Hr'g Tr. at 9-10, 12–13. Petitioner's aggregate sentence for all three convictions was then reduced to an indeterminate prison term of 15 years to 30 years, pursuant to New York Penal Law § 70.30(1)(iii)(B).

**Direct Appeal**

Petitioner appealed his convictions to the New York Appellate Division, Fourth Department, asserting that: (1) the verdict was contrary to the weight of the evidence; (2) he was denied effective assistance of counsel; and (3) the sentence was illegal, harsh and excessive. *See* SR 57–73. Petitioner also filed a *pro se* brief to the Fourth Department, claiming that: (1) he was denied the "right to be informed of the nature and cause of the accusations against him;" (2) the first count of the indictment was time barred; and (3) he was denied the right to a fair trial by an impartial jury on the basis that jurors were seen talking to reporters and one juror resided in a different county. *See* SR 111–123. The People opposed both briefs. *See* SR 97-110; SR 124–133.

4

On July 10, 2015, the Appellate Division Fourth Department unanimously affirmed the jury's verdict.  The court held that the verdict was not against the weight of the evidence, that Petitioner was afforded meaningful representation, that the indictment was sufficiently specific, count one of the indictment was not time barred, that there was no denial of fair trial, and that the sentence was not unduly harsh or severe.  SR 221–223.  Additionally, the court stated that Petitioner's claim that counsel was ineffective for advising him to abscond on the ground that he would not receive a fair trial is based on facts outside the record and must be raised on a motion pursuant to CPL § 440.  SR 222.  Likewise, the court determined that the claim that Petitioner was denied a fair trial with an impartial jury due to jurors allegedly talking with the press was outside the record and would properly be raised in a CPL § 440 motion.  SR 223.

Petitioner filed an application for leave to appeal to the Court of Appeals and it was denied on September 28, 2015.  SR 225.  Petitioner's subsequent motion for reconsideration was denied on December 22, 2015.  SR 226.

On April 18, 2016, Petitioner filed a motion to vacate judgment pursuant to CPL § 440, asserting that:  (1) he was denied his right to counsel pursuant to the United States Constitution and the New York Constitution and (2) he was deprived of his right to effective assistance of counsel because counsel failed to move to suppress the recorded statement which was taken in violation of Petitioner's right to counsel and failed to subpoena additional alibi witnesses.  SR 150–165.  The People opposed the motion.  SR 170.  The court found the motion without merit and denied it in its entirety.  SR 227–231.

Petitioner then filed an application for leave to appeal to the Appellate Division Fourth Department and it was denied on November 2, 2016.  SR 233.  On December 8, 2016, Petitioner

filed a motion for leave to reargue the application for leave to appeal.  SR 189.  The motion was

denied on January 25, 2017.  SR 234.

**Habeas Corpus Petition**

Petitioner now files this Petition for Writ of Habeas Corpus raising numerous grounds for

relief, including that: (1) he was denied his right to counsel and right against self-incrimination

when the phone call with J.M. was recorded and used in trial; (2) he was denied the right to a fair

trial by an impartial jury; (3) he was denied the right to effective assistance of counsel because

trial counsel failed to demand a *Huntley* suppression hearing, failed to subpoena additional alibi

witnesses, failed to object to an ineligible juror, interfered with a witness by "friend requesting"

them on Facebook, and failed to present clearing evidence on Petitioner's behalf; and (4) the

indictment was defective because the first count was time barred and the first two counts provided

an inadequate notice of the charges against him.  *See* ECF No. 1.

## DISCUSSION

**Petitioner's *Pro Se* Status**

Since Petitioner is proceeding *pro se*, the Court has construed his submissions liberally,

"to raise the strongest arguments that they suggest."  *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir.

1994).

**Section 2254 Principles**

Petitioner brings this habeas corpus petition pursuant to 28 U.S.C. § 2254, and the general

legal principles applicable to such claim are well settled.

> As amended by the Antiterrorism and Effective Death Penalty Act
> of 1996 ("AEDPA") and interpreted by the Supreme Court, 28
> U.S.C. § 2254—the statutory provision authorizing federal courts to
> provide habeas relief to prisoners in state custody—is "part of the
> basic structure of federal habeas jurisdiction, designed to confirm
> that state courts are the principal forum for asserting constitutional

challenges to state convictions." *Harrington v. Richter*, 562 U.S. 86, 131 S. Ct. 770, 787, 178 L. Ed. 2d 624 (2011). A number of requirements and doctrines . . . ensure the centrality of the state courts in this arena.  First, the exhaustion requirement ensures that state prisoners present their constitutional claims to the state courts in the first instance.  *See id.* (citing 28 U.S.C. § 2254(b)).  Should the state court reject a federal claim on procedural grounds, the procedural default doctrine bars further federal review of the claim, subject to certain well-established exceptions.  *See generally*, *Wainwright v. Sykes*, 433 U.S. 72, 82–84, 97 S. Ct. 2497, 53 L. Ed. 2d 594 (1977).  If the state court denies a federal claim on the merits, then the provisions of § 2254(d) come into play and prohibit federal habeas relief unless the state court's decision was either: (1) "contrary to, or involved an unreasonable application of, clearly established Federal law," or (2) "based on an unreasonable determination of the facts in light of the evidence presented in State court."  28 U.S.C. § 2254(d)(1)-(2).  Finally, when conducting its review under § 2254(d), the federal court is generally confined to the record before the state court that adjudicated the claim.  *See Cullen v. Pinholster*, -- U.S. ---, 131 S. Ct. 1388, 1398–99, 79 L. Ed. 2d 557 (2011).

*Jackson v. Conway*, 763 F.3d 115, 132 (2d Cir. 2014).  As just mentioned, regarding claims that were decided on the merits by state courts,

a federal court may grant habeas corpus relief to a state prisoner on a claim that was adjudicated on the merits in state court only if it concludes that the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(1)–(2).

A state court decision is contrary to clearly established Federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to the Supreme Court's result.

A state court decision involves an unreasonable application of clearly established Federal law when the state court correctly identifies the governing legal principle but unreasonable applies it to the facts of the particular case. To meet that standard the state

7

> court's decision must be so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement. It is well established in this circuit that the objectively reasonable standard of § 2254(d)(1) means that a petitioner must identify some increment of incorrectness beyond error in order to obtain habeas relief.

*Santana v. Capra*, No. 15-CV-1818 (JGK), 2018 WL 369773, at *7–8 (S.D.N.Y. Jan. 11, 2018) (additional citations and internal quotation marks omitted).

### **Unexhausted and Procedurally Defaulted Claims**

Respondent maintains that several of Petitioner's claims are unexhausted and/or procedurally defaulted.[4]

Where the court is faced with a mixed petition containing both exhausted and unexhausted claims, the court has various options. First, the court may dismiss the petition. *Rose v. Lundy*, 455 U.S. 509, 522 (1982). Second, where the petitioner has shown good cause for failure to exhaust and that the unexhausted claims are not meritless, the court may stay the petition and allow petitioner to exhaust the claim in state court. *Rhines v. Weber*, 544 U.S. 269, 277-78 (2005). Third, the court may permit a petitioner to amend the petition to delete the claims, or where the statute of limitations period has run, deem the petition to have been amended to delete the unexhausted claims and consider the remaining claims on the merits. *Johnson v. Kirkpatrick*, 11 Civ. 1089(CM)(AJP), 2011 WL 3328643, at *14 (S.D.N.Y. Aug. 3, 2011). Lastly, the court may deny relief on the merits of the unexhausted claims. 28 U.S.C. § 2254(b)(2).

---

[4] *See Smith v. Scully*, 588 F. App'x 16, 17 (2d Cir. 2014) (Because "were he to return to the state courts with his unexhausted claim, those courts would find the claim barred by the application of a state procedural rule, we must deem the claim procedurally defaulted." *Jackson v. Conway*, 763 F.3d 115, 133 (2d Cir. 2014) (internal quotation marks omitted); *see also Rustici v. Phillips*, 308 F. App'x 467, 469 (2d Cir. 2009) ("In New York, a defendant may not collaterally attack a conviction based on a claim that he could have raised on direct appeal where he unjustifiably failed to raise it. N.Y. Crim. Proc. Law § 440.10(2)(c).").

Petitioner's claims of violations of his right to: (1) a fair trial by an impartial jury, as it pertains to the failure of the court to voir dire the jury after potentially prejudicial media exposure and (2) effective assistance of counsel as it pertains to trial counsel's failure to object to an ineligible juror, failure to present clearing evidence, and for improperly friend requesting a witness on Facebook, are unexhausted.  Indeed, though Petitioner raised the issue of the jury's potential exposure to media on appeal, the Fourth Department made clear that such a claim should be raised in a CPL § 440 motion because the basis of the claim was outside the record.  SR 223.  Despite the clear indication by the appellate court, Petitioner failed to include the claim in his subsequent § 440 motion.  *See* SR 150–65.  Additionally, nowhere in Petitioner's appeal or his CPL § 440 motion does Petitioner raise the various bases he now asserts for his ineffective assistance of counsel claim.  *See id.*  Specifically, Petitioner does not assert that trial counsel failed to present "clearing evidence"[5] that Petitioner alleges counsel had at the time of trial, and presumably, evidence Petitioner was aware of.  Nor does Petitioner at all mention the issue of a Facebook "friend request," despite also knowing this information at the time the appeal and motion were filed.

Neither of these claims are procedurally barred as Petitioner maintains the ability to pursue such claims in a CPL § 440 motion in New York state court.  However, in order for this Court to properly stay the Petition and allow Petitioner an opportunity to seek review in state court, he must demonstrate good cause for failing to previously exhaust these claims.  While the Supreme Court did not define "good cause" in the central decision of *Rhines*, "lower courts have determined that it requires a showing of either (1) 'some factor external to the petitioner [that] gave rise to the

---

[5] "Clearing evidence" is the term Petitioner uses throughout his Petition, and will be used in this opinion. Based on Petitioner's argument and the context in which the term is used, the Court interprets "clearing evidence" as meaning "exculpatory evidence."

default' or (2) 'reasonable confusion,' which is more forgiving and incorporates the petitioner's subjective reasons for the delay in seeking state relief." *Martinez v. Mariuscello*, No. 16-cv-7933 (RJS), 2017 WL 2735576, at *2 (S.D.N.Y. June 23, 2017) (quoting *Whitley v. Ercole*, 509 F. Supp.2d 410, 417–18 (S.D.N.Y. 2007)).  The failure to demonstrate good cause is fatal to a petitioner's ability to be granted a stay on a pending petition. *Carr v. Graham*, 27 F. Supp. 3d 363, 365 (W.D.N.Y. 2014).

Here, Petitioner claims that his failure to file a CPL § 440 motion regarding the court's failure to voir dire the jury after potential media exposure, as the appellate court suggested, was due to his status as "an indigent petitioner, with no legal background or training."  ECF No. 21 at 4.  These are simply not the type of impediments that are recognized as adequate good cause for failing to seek review on a claim.  *See Jeffrey v. Capra*, No. 20-CV-232 (RPK), 2020 WL 4719629, at *2 (E.D.N.Y. Aug. 12, 2020) (delay in filing for state review due to being indigent and incarcerated is not sufficient good cause); *Wesley-Rosa v. Kaplan*, 274 F. Supp.3d 126, 129 (E.D.N.Y. 2017) ("ordinary badges of incarceration" do not constitute good cause). On the contrary, Petitioner does not make any attempt to explain why he failed to raise the ineffective assistance of counsel claims in state court.  As such, the Court will not stay the Petition while Petitioner seeks relief through state court review, and the claims are denied, also for lacking merit, as set forth below.

Petitioner's claim that: (1) his right to self-incrimination was violated due to the admission of the recorded phone call with J.M., (2) his right to fair trial by impartial jury was violated due to the service of an ineligible juror, and (3) the indictment was defective, are also unexhausted. Indeed, Petitioner never claimed that the phone call violated his Fifth Amendment right against self-incrimination, but rather, Petitioner consistently argued that the call violated his right to

counsel.  *See* SR 153–155.   Contrary to Petitioner's assertion that the Fifth Amendment claim was based on new information, these claims are both based on the same set of facts.  *See* ECF No. 21 at 1–4; ECF No. 1-1 at 2–8.   Additionally, while Petitioner asserted on appeal that his right to a fair trial was violated due to an ineligible juror, Petitioner did not seek leave to appeal to the Court of Appeals on this ground.  *See* SR 172-87.   Nor did Petitioner seek leave to appeal to the Court of Appeals on the defective indictment claim.  *See id.*   While Petitioner asserts a host of reasons for these failures, including that appellate counsel failed to notify defendant that he needed to raise each issue separately, the claims are not only unexhausted but procedurally barred as there is no avenue by which Petitioner can exhaust these claims in state court.

In addition to these procedural barriers, all of the grounds Petitioner asserts for habeas relief lack merit, and are therefore denied for the reasons set forth below.

**The Claims Lack Merit**

**Ground One:**          **Conviction Obtained in Violation of Petitioner's Right Against Self-Incrimination and Right to Counsel**

Petitioner first asserts that his Fifth Amendment right against self-incrimination was violated when the recorded phone conversation with J.M. was admitted as evidence during the trial.  ECF No. 1 at 7.  This claim lacks merit.

The Supreme Court has made clear that,

> the [Fifth] Amendment does not automatically preclude self-incrimination, whether spontaneous or in response to questions put by government officials . . . .  Indeed, far from being prohibited by the Constitution, admissions of guilt by wrongdoers, if not coerced, are inherently desirable.  In addition . . . the Fifth Amendment proscribes only self-incrimination obtained by a "genuine compulsion of testimony."  *Michigan v. Tucker*, 417 U.S. 433, 440 (1974).  Absent some officially coerced self-accusation, the Fifth Amendment privilege is not violated by even the most damning admissions.  Accordingly, unless the record reveals some

compulsion, [a defendant's] incriminating testimony cannot conflict
with any constitutional guarantees of the privilege.

*United States v. Washington*, 431 U.S. 181, 186–87 (1977) (additional internal citations omitted).

Even assuming J.M. was acting as an agent of police when she contacted Petitioner, there is simply no evidence in the record here to demonstrate that Petitioner was coerced or compelled to admit to the sexual abuse allegations.  Indeed, Petitioner does not even attempt to allege that his admission was the result of coercion by J.M. Rather, Petitioner merely claims that the call was prejudicial, as it was "the only substantive evidence offered."  *See* ECF No. 21 at 2.  Whether or not the call was incriminating is not determinative of whether the Fifth Amendment applies.  In fact, absent some evidence of coercion, Petitioner's admission to the allegations of sexual abuse simply does not invoke the protections of the Fifth Amendment.  *See Washington*, 431 U.S. at 188 (explaining that the test to determine whether the Fifth Amendment is invoked to protect a defendant from self-incrimination is determining whether the statement was made in a setting where "the free will of the witness was overborne.") (citing *Rogers v. Richmond*, 365 U.S. 534, 544 (1961)).  Due to the clear lack of coercion, the Fifth Amendment is not applicable and Petitioner's claim is not a legitimate ground for habeas relief.

Petitioner also contends that his Sixth Amendment right to counsel was violated when the recorded phone conversation was admitted as evidence at trial.  ECF No. 1-1 at 3–8.  Specifically, Petitioner contends that because he was questioned by police with an attorney present in connection with sexual abuse allegations involving J.M. in 1994, the right to counsel remained through the time of the phone call in 2011.  *Id.*  In response, Respondent states that this claim lacks merit as the right to counsel had not yet attached at the time of the 2011 call.  ECF No. 16-1 at 16. The Court agrees.

The Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense."  U.S. Const. amend. VI.  It is well established that this right to counsel attaches at or after the time that adversary judicial proceedings have been initiated against the accused.  *See Kirby v. Illinois*, 406 U.S. 682, 689–90 (1972); *see also United States v. Gouveia*, 467 U.S. 180, 187–88 (1984) (collecting cases).  Indeed, even if an active investigation is underway, "the fact that a person is the subject of an investigation is not enough to trigger his Sixth Amendment right to counsel."  *United States v. Vasquez*, 675 F.2d 16, 17 (2d Cir. 1982).

J.M. questioned Petitioner about the abuse at issue here in December of 2011.  Trial Tr. at 607.  At that point, no judicial proceeding had commenced.  Indeed, there was no indictment charging Petitioner with sexual abuse until May 2012, which was not filed until June 6, 2012.  SR 1.  As such, no right to counsel under the Sixth Amendment had attached at the time of the phone call.  *See, e.g.*, *United States v. RW Prof'l Leasing Serv. Corp.*, 327 F. Supp. 2d 192, 195–96 (E.D.N.Y. 2004) (finding defendant's right to counsel had not attached at the time she was interviewed by the FBI, IRS, and other government agents despite being represented by counsel because no indictment had been filed); *United States v. Harloff*, 807 F. Supp. 270, 274–75 (W.D.N.Y. 1992) (tape recorded conversation between an informant and defendant was not in violation of the Sixth Amendment because no judicial proceedings had been initiated at the time of the phone call).  Therefore, the state's rejection of the claim here was not an unreasonable application of federal law.

**Ground Two:**          **Conviction was Obtained in Violation of the Right to Fair Trial by an Impartial Jury**

Petitioner first claims that his right to a fair trial by an impartial jury was violated because although the trial court informed the jury that they must not be influenced by external sources, a

number of jurors were seen listening to a television interview with lawyers.  ECF No. 1-1 at 13.

Petitioner's claim lacks merit.

It is well established that the Sixth Amendment protects a criminal defendant's right to fair

trial by an impartial jury.  U.S. Const. amend. VI.  Where it is believed that jurors have been

exposed to publication or information regarding an ongoing criminal trial, the district court must

first "decide whether the publicity contains potentially prejudicial information, and whether the

members of the jury might have been exposed to it."  *United States v. Lord*, 565 F.2d 831, 838 (2d

Cir. 1977).  "If . . . the court determines that the article or broadcast has a potential for unfair

prejudice, then an initial inquiry of the jury is necessary to ascertain whether any of its members

have been exposed to the information."  *Id.*

Here, the record shows only that "there were . . . some jurors *perhaps* out in the rotunda,

with a cameraman with lawyers."  Trial Tr. at 430 (emphasis added).  There is nothing in the record

to suggest that this discussion between a cameraman and lawyer contained prejudicial information

nor is there anything in the record to suggest that jurors were actually exposed to any prejudicial

information.  Nevertheless, the trial court put a gag order in place and informed the lawyers that

there was to be no more contact between them and the press.  *Id.* at 430-31.  Petitioner makes no

allegation that any jurors were impartial as a result of this possible exposure nor does he assert he

suffered any prejudice as a result of the contact with the press.  In the absence of such, there is

simply no basis for habeas relief and the claim must be denied.  *See Allen v. Graham*, No. 16-cv-

1285(KAM)(LB), 2020 WL 4482674, at *16 (E.D.N.Y. Aug. 4, 2020) (denying a habeas claim on

the basis of a denial of the right to fair and impartial jury where petitioner did not present evidence

that jurors were not impartial but rather argued that the jurors may have been exposed to prejudicial

information); *People v. Bosket*, 564 N.Y.S.2d 785, 787 (App. Div. 1990) (awareness of media accounts of a crime does not render a juror ineligible to serve where the juror can remain impartial).

Petitioner also asserts that his right to a fair trial by an impartial jury was violated because a juror who resided in a county other than Niagara County remained on the jury.  ECF No. 1-1 at 13–14.  Even assuming this claim was properly presented for habeas relief on procedural grounds, the claim lacks merit.  While the Sixth Amendment guarantees a criminal the right to a fair trial by an impartial jury of the State and district in which the crime was committed, Petitioner is not claiming that the juror in question lacked the ability to be fair and impartial.  Thus, it seems that Petitioner is asserting that the juror was ineligible due to her residency under state law requirements.  *See id.* at 13–14.  However, the trial court, Petitioner's trial counsel, and the prosecution questioned the juror at issue here and found that her legal address was in Niagara County and she resided there a few nights a week.  Trial Tr. at 374.  They also found that there were a few nights a week where she resided in another location, due to issues with her former spouse.  *Id.*  Due to the status of her residency and legal address, she was deemed eligible to preside on the jury, with no objection from Petitioner's counsel.  *Id.*  Because this claim implicates only the application of state law, it is not the proper basis for federal habeas relief.  *Estelle v. McGuire*, 502 U.S. 62, 63 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.") (citing *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990)).

**<u>Ground Three:</u>**        **Petitioner was Denied Effective Assistance of Counsel**

Petitioner contends that his trial attorney provided ineffective assistance of counsel in violation of his Sixth Amendment rights.  Specifically, Petitioner contends that counsel was ineffective in five respects, including that trial counsel: (1) failed to demand a suppression hearing; (2) failed to call or subpoena additional alibi witnesses; (3) interfered with a state witness by

"friend requesting" the witness on Facebook; (4) failed to present clearing evidence on behalf of Petitioner; and (5) failed to object to an ineligible juror.  Each claim is denied as lacking merit for the reasons set forth below.

The familiar test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), for evaluating an ineffective assistance of counsel claim has two prongs.  The first requires showing that counsel's performance "fell below an objective standard of reasonableness."  *Id.* at 688.  "Constitutionally effective counsel embraces a 'wide range of professionally competent assistance,' and 'counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'"  *Greiner v. Wells*, 417 F.3d 305, 319 (2d Cir. 2005) (quoting *Strickland*, 466 U.S. at 690).  Fulfilling the second prong of an ineffective assistance claim requires a showing of prejudice which translates to "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.  "The habeas petitioner bears the burden of establishing both deficient performance and prejudice."  *Greiner*, 417 F.3d at 319 (citing *United States v. Birkin*, 366 F.3d 95, 100 (2d Cir. 2004) (additional citations omitted)).

A defense attorney cannot be deemed ineffective for failing to pursue an unmeritorious defense or application.  *See United States v. Kirsh*, 54 F.3d 1062, 1071 (2d Cir. 1995) ("[T]he failure to make a meritless argument does not rise to the level of ineffective assistance and strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable.") (internal citations and quotations omitted).

Petitioner first claims that trial counsel was ineffective for failing to demand a *Huntley* suppression hearing to suppress the recorded phone call between Petitioner and J.M..  ECF No. 1-1 at 8.  "Where an ineffective assistance of counsel claim is premised on counsel's failure to make

a suppression motion, a showing of prejudice under *Strickland* requires that the underlying suppression claim was 'meritorious' and that 'there is a reasonable probability that the verdict would have been different absent the excludable evidence.'" *Parisi v. Artus*, No. 08-CV-1785 (ENV), 2010 WL 4961746, at *6 (E.D.N.Y. Dec. 1, 2010) (quoting *Maldonado v. Burge*, 697 F. Supp.2d 516, 525 (S.D.N.Y. 2010)) (additional citations omitted).  As discussed above, a suppression motion here would not have been meritorious given the right counsel had not attach at the time of the phone call.  Therefore, Petitioner cannot show that the failure of counsel to seek to suppress the evidence caused him prejudice, or that the state court was unreasonable in denying this claim. *See, e.g.*, *Campbell v. Lee*, No. 11 Civ. 7737 (LGS) (FM), 2016 WL 6892766, at *4 (S.D.N.Y. Nov. 21, 2016) (trial counsel was not ineffective for failing to move to suppress DNA evidence where the motion would not have been successful); *Maldonado*, 697 F. Supp.2d at 543–44 (counsel was not ineffective for failing to move to reopen the hearing to suppress the lineup identification because there was no reasonable probability of success of the motion); *Collins v. Beaver*, No. 03 CV 0416(NG), 2005 WL 1801603, at *12 (S.D.N.Y. July 27, 2005) (counsel was not ineffective for failing to raise denial of petitioner's suppression motion on appeal where counsel had "no reason to believe" that the claim would succeed).

Next, Petitioner claims that trial counsel was ineffective for failing to subpoena and call additional alibi witnesses.  ECF No. 1-1 at 10.  Specifically, Petitioner asserts that Pastor Barry L. Lillis and M. Patricia Lillis would have testified that Petitioner was in Cassadaga, New York, in the morning of December 25, 2003, and that it "would have been impossible" for him to travel to North Tonawanda due to weather. *Id.* at 11.  Additionally, Nichole and Darryl Burridge would have testified to the poor driving conditions that day. *Id.* at 12.  In support, Petitioner now attaches an affidavit from Diane Turley, asserting that on December 25, 2003, she and Petitioner spent the

day in Cassadaga, New York, and never traveled to North Tonawanda, and an affidavit from M. Patricia Lillis, asserting that on December 25, 2003, Petitioner called Lillis from his home. *Id.* at Ex. E. This Court does not find counsel to be ineffective on this basis.

To begin with, the state court denied this claim on the basis that Petitioner failed to provide any support, other than his own self-serving affidavit, from the potential witnesses and did not show "that their testimony would have had a bearing on the result of the case." SR 230. While Petitioner attaches witness affidavits to the currently pending Petition, their absence from the state court record bars this Court from taking the affidavits into consideration. *Pinholster*, 563 U.S. at 185 ("[E]vidence introduced in federal court has no bearing on § 2254(d)(1) review. If a claim has been adjudicated on the merits by a state court, a federal habeas petitioner must overcome the limitation of § 2254(d)(1) on the record that was before state court."). As such, it simply cannot be said that the state court's decision was unreasonable or contrary to clear federal law.

Moreover, "counsel's decision as to 'whether to call specific witnesses—even ones that might offer exculpatory evidence—is ordinarily not viewed as a lapse in professional representation.'" *United States v. Best*, 219 F.3d 192, 201 (2d Cir. 2000) (quoting *United States v. Schmidt*, 105 F.3d 82, 90 (2d Cir. 1997), *cert. denied*, 522 U.S. 846 (1997)) (additional citations omitted). "The decision whether to call any witnesses on behalf of the defendant, and if so which witnesses to call, is a tactical decision of the sort engaged by defense attorneys in almost every trial." *United States v. Smith*, 198 F.3d 377, 386 (2d Cir. 1999) (internal citations and quotations omitted). "Because of this inherently tactical nature, the decision not to call a particular witness generally should not be disturbed." *United States v. DeJesus*, 57 F. App'x 474, 478 (2d Cir. 2003).

Here, Petitioner's trial counsel presented alibi witness Debra A. Kamman, Petitioner's sister, who testified that on December 25, 2003, Petitioner was at her home around 1:00 p.m. for

Christmas dinner.  Trial Tr. at 617, 622.  She also testified that her daughter arrived three hours later than anticipated due to being "stuck on the Thruway," from what Ms. Kamman stated was bad weather.  *Id.* at 621.  She further stated that Petitioner would have driven from a location further than her daughter, suggesting, it would have taken Petitioner potentially over three hours to arrive at her house by 1:00 p.m. that day.  *Id.* at 625.  This testimony called into question that of A.S, who testified that on that same day, sometime after the family had breakfast at her grandmother's in North Tonawanda around 10:30 or 11:00 a.m., Petitioner abused her.  *See id.* at 470, 473–74.  It also calls into question the testimony of Barbara Stitt, who testified that Petitioner was at A.S.'s grandmother's home in North Tonawanda around 10:00 or 10:30 a.m. on December 25, 2003.  *Id.* at 453–54.

It is well established that where "the effect of the presentation of additional alibi witnesses would have been cumulative at best, the failure of counsel to call additional alibi witnesses cannot be considered an error that deprived the defendant of a fair trial." *Treppedi v. Scully*, No. 85 Civ. 7308 (MGC), 1986 WL 11449, at *3 (S.D.N.Y. Oct. 9, 1986) (citing *Murray v. Maggio*, 736 F.2d 279 (5th Cir. 1984)); *see also Samuels v. Bennett*, No. 03 Civ. 2340(BSJ)(FM), 2009 WL 2516850, at *4 (S.D.N.Y. Aug. 17, 2009) (failure to present additional alibi witnesses not found to be an error by counsel where the additional testimony would be plainly cumulative).  It is likely that trial counsel determined the other potential alibi witnesses would only provide cumulative evidence regarding the weather and driving conditions on December 25, 2003 and so, it was unnecessary to have them testify in addition to Ms. Kamman.[6]  *See* ECF No. 1-1 at 11–12 (Petitioner describing

---

[6] Petitioner also asserts that the testimony of his wife, Diane Turley, would have established that the two did not go to North Tonawanda on December 25, 2003.  *See* ECF No. 1-1 at Ex. E.  While failing to call Ms. Turley due to the close relationship between Petitioner and Ms. Turley alone would not be a sound trial strategy, *see, e.g.*, *Lopez v. Miller*, 915 F. Supp.2d 373, 428–29 (E.D.N.Y. 2013) (court finding that the failure to call witnesses will potentially exculpatory evidence due to the close relationship alone was insufficient basis and therefore, deemed ineffective assistance of counsel) (collecting cases), it was impossible for trial counsel to do so.  Indeed, Petitioner and his wife failed to appear in court following lunch on the second day of trial and the two fled the state.  *See* Trial Tr. at 493–94.

additional testimony would have demonstrated the poor driving conditions on December 25, 2003). Counsel also indicated on January 24, 2013, that he had not yet subpoenaed "Pastor Barry and Debbie Kamman," recognizing the procedure necessary to present alibi witnesses, and seemingly, made the ultimate decision that only the testimony of Ms. Kamman was necessary. Trial Tr. at 494.

Even if this was deemed unreasonable conduct by counsel, Petitioner cannot demonstrate that the failure to present additional alibi witnesses was prejudicial. Where a trier of fact does not have an opportunity to weigh the credibility of a witness testimony against an alibi witness testimony, the confidence of the proceedings may be undermined. *See, e.g.*, *Bigelow v. Haviland*, 576 F.3d 284, 291–92 (6th Cir. 2009) (failure to produce numerous alibi witness in trial was prejudicial where the three corroborating witnesses weighed against the two "far from ideal witnesses" likely would have altered the jury's decision); *Raygoza v. Hulick*, 474 F.3d 958, 965 (7th Cir. 2007) ("Obviously, a trier of fact approaching the case with fresh eyes might choose to believe the eyewitnesses, and reject the alibi evidence, but this trier of fact never had the chance to do so. This undermines our confidence in the outcome of the proceedings. . . ."); *Brown v. Myers*, 137 F.3d 1154, 1157-58 (9th Cir. 1998) (prejudice suffered where counsel failed to present testimony of any alibi witnesses). However, in the present case, the trier of fact was able weigh the credibility of the two alternate possibilities through the alibi witness testimony of Ms. Kamman. As such, Petitioner cannot be said to have been deprived of a fair trial.

Third, Petitioner claims that trial counsel was ineffective for failing to present "clearing evidence" on his behalf. ECF No. 1 at 8. In support, Petitioner asserts that trial counsel possessed evidence of Petitioner's innocence on counts two and three of the indictment. Specifically, an

---

Petitioner's trial continued to completion without him. *See* Trial Tr. at 726–27 (discussing sentencing and procedure of the court if Petitioner was still absent).

electric bill receipt paid by Petitioner on December 25, 2003, at 8:57 a.m. "from his home," home videos of Thanksgiving and Christmas from 1996, 1997, and 2003, showing Petitioner was only at Pioneer Drive once, and weather radar from December 25, 2003, showing a severe snow storm which would have impaired Petitioner's ability to drive that day.  ECF No. 21 at 7–8.

Without more substance of what this alleged evidence entails, or copies of the alleged evidence, it is difficult for the Court to evaluate the merits of this claim.  Nevertheless, to establish that the failure to introduce such evidence violated Petitioner's right to effective counsel, Petitioner's claim must "overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'"  *Strickland*, 466 U.S. at 689. Petitioner does not submit evidence sufficient to overcome this presumption.

First, even if a bill receipt was able to establish Petitioner's whereabouts at 8:57 a.m., A.S.'s testimony provided that the alleged abuse occurred during the family Christmas gathering, which always began sometime around 10:30 a.m. or 11:00 a.m.  *See* Trial Tr. at 487.  Thus, this so-called "clearing evidence" would likely not change the outcome of the case, and hence does not establish the prejudice necessary for an ineffective assistance of counsel claim.  *See Strickland*, 466 U.S. at 694. Further, given the strength of the evidence introduced by the prosecution, home videos or proof of hazardous driving conditions could not conclusively establish Petitioner's absence from the holiday gatherings.

Moreover, as previously discussed, Petitioner's trial counsel did, in fact, present testimony regarding Petitioner's whereabouts and the snowstorm on December 25, 2003.  *See id.* at 616–625. The failure to present testimony that is "merely cumulative of the evidence otherwise presented by defense counsel" is not a sufficient basis for claiming counsel was ineffective.  *Krasniqi v. United States*, 195 F. Supp. 3d 621, 634 (S.D.N.Y. 2016); *see also United States v. Luciano*, 158 F.3d

655, 660 (2d Cir. 1998) (rejecting an ineffective assistance claim where defendant asserted a witness who would've corroborated another witness should have testified, but counsel might have regarded the testimony as cumulative).  Therefore, this claim lacks merit.

Finally, Petitioner claims that trial counsel was ineffective for "friend requesting" a witness on Facebook in violation of a restraining order as well as for failing to object to an ineligible juror. ECF No. 1 at 8.  These claims lack merit as Petitioner cannot demonstrate that either claim resulted in any prejudice.  Indeed, Petitioner does not even attempt to assert any prejudice in which he suffered for such allegedly faulty conduct by trial counsel.  *See* ECF No. 21 at 7–8.  Therefore, the claims are denied.

**<u>Ground Four:</u>**          **Defective Indictment**

Lastly, Petitioner claims his indictment was defective on two grounds.  First, that count one was time barred.  Second, that the first- and second-degree course of sexual conduct against a child charges failed to provide adequate notice of the charges against him.  Specifically, because of the "vast time frame" alleged, the location was only identified as "Niagara County," and the acts tracked the language of the statute.  ECF No. 1-1 at 17.  There is no basis for relief on such grounds.

As an initial matter, "statute of limitations claims . . . essentially present only a state law issue, they are not cognizable on federal habeas corpus review." *Sigl v. New York*, No. 14-CV-6383-CJS, 2015 WL 4429430, at *5 (W.D.N.Y. July 20, 2015) (citing *McGuire*, 502 U.S. at 67-68) (additional citations omitted). Regardless, the prosecution was timely under New York law. At the time this case was prosecuted, New York C.P.L. § 30.10(3)(f) provided that the five year statute of limitations did not begin to run until J.M. "reached the age of eighteen or the offense [wa]s reported to a law enforcement agency or statewide central register of child abuse and

maltreatment, whichever occur[ed] earlier." Petitioner argues that the statute had tolled because

the abuse was reported in 1994 and therefore, the time to prosecute Petitioner expired in 1999.[7]

ECF No. 1-1 at 14.  However, Petitioner was not charged with any alleged abuse dating back to

1994.  Rather, Petitioner was charged with abuse beginning in 1996.  The facts are clear that such

abuse was first reported by J.M. in 2011, two years after she turned eighteen, and the indictment

was filed in 2012.  Therefore, the prosecution was clearly within the five-year statute of limitations

and the prosecution was timely.

Moreover, Petitioner's indictment was sufficiently detailed.  The Second Circuit has

explained that,

> An indictment need only provide sufficient detail to assure against
> double jeopardy and state the elements of the offense charged,
> thereby apprising the defendant of what he must be prepared to
> meet.  *United States v. Salazar*, 485 F.2d 1272, 1277 (2d Cir. 1973),
> *cert. denied*, 415 U.S. 985, 94 S. Ct. 1579, 39 L. Ed. 2d 882 (1974).
> Under this test, an indictment need do little more than to track the
> language of the statute charged and state the time and place (in
> approximate terms) of the alleged crime[.]

*United States v. Tramunti*, 513 F.2d 1087, 1113 (2d Cir. 1975) (additional internal citations

omitted).  The indictment did so here.

The almost two-year time period alleged here was detailed enough to pass constitutional

muster.  Courts have held that specifying periods of time rather than asserting specific dates is

sufficient for purposes of an indictment, especially in situations of abuse of a minor.  *See Edwards*

---

[7] Petitioner also attempts to assert his prosecution violated the ex post facto clause because New York Penal Law §
130.75, which was enacted in 1996, was applied to "allegations that began in 1994," and therefore effectively revived
claims that would have otherwise been barred by the statute of limitations set forth in C.P.L. § 30.10(3)(f), depriving
petitioner of legal defenses. ECF No. 1-1 at 14–15, ECF No. 2 at 9–10.  This is not an accurate claim as Penal Law §
130.75 and CPL § 30.10(3)(f) were enacted simultaneously.  Thus, it is not possible for CPL § 30.10(3)(f) to create a
new limitations period extending previously barred prosecution, in violation of the ex post facto clause.  *See generally*,
*Stogner v. California*, 539 U.S. 607, 610–612 (2003).  Moreover, the conduct that allegedly occurred in 1994 was not
part of the indictment at issue here.  Thus, such conduct cannot be the basis for a claim of a violation of the ex post
facto clause.

*v. Mazzuca*, No. 00 Civ. 2290(RJS)(KNF), 2007 WL 2994449, at *5 (S.D.N.Y. Oct. 15, 2007).

Indeed, courts have recognized that even fairly large time windows, like that set forth here, in the

context of child abuse are not in conflict with constitutional notice requirements. *Valentine v.*

*Konteh*, 395 F.3d 626, 632 (6th Cir. 2005); *see, e.g.*, *Palmer v. Marshall*, No. 07 Civ. 5917(PKC),

2009 WL 47424, at *3 (S.D.N.Y. Jan. 8, 2009) (almost four year time period); *Hunter v. New*

*Mexico*, 916 F.2d 595, 600 (10th Cir. 1990) (three year time period); *Parks v. Hargett*, No. 98-

7068, 1999 WL 157431, at *4 (10th Cir. Mar. 23, 1999) (seventeen month time period).  Notably,

Petitioner does not claim that this time frame prevented him from developing a defense or asserting

an accurate alibi.  *See* ECF No. 1-1 at 17.

  The location of "Niagara County" in the indictment also does not render it defective.

Again, courts have deemed a general location of county as sufficient to put a defendant on notice

of the crime alleged.  *See, e.g.*, *Palmer*, 2009 WL 47424, at *3 (finding that the identification of

location by county only is not unconstitutional).  Indeed, Petitioner does not claim that he was

unable to properly defend himself due to the generality of the location in the indictment—which,

in any event, was later clarified in the Bill of Particulars with specific addresses. *See* SR 42.

  Finally, the fact that an indictment tracks the language of the statute at issue does not render

the indictment defective.  *Tramunti*, 513 F.2d at 1113 ("an indictment need do little more than to

track the language of the statute charged and state the time and place (in approximate terms) of the

alleged crime").  Indeed, the indictment here does more than that. Count one of the indictment

provides that the conduct at issue "consist[ed] of contact between the defendant's mouth and

[J.M.'s] vagina." SR 83. Count two of the indictment provides that the conduct at issue "consist[ed]

of contact between the defendant's hand and [A.S.'s] vagina."  *Id.*  These alleged facts go beyond

simply tracking the statute and put Petitioner on clear notice of the specific conduct at issue.  In

fact, Petitioner does not anywhere allege that he was not aware of what conduct was at issue or that he was unable to properly prepare to defend himself.  Thus, this is not a sufficient basis for habeas relief.

## CONCLUSION

For the foregoing reasons, Petitioner Paul S. Turley's application for habeas relief pursuant to 28 U.S.C. § 2254 [ECF No. 1] is denied.  The Clerk of the Court is directed to close this case. Pursuant to 28 U.S.C. § 2253, the Court declines to issue a certificate of appealability, since Petitioner has not made a substantial showing of the denial of a constitutional right. The Court hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Order would not be taken in good faith and leave to appeal to the Court of Appeals as a poor person is denied. *Coppedge v. United States*, 369 U.S. 438 (1962). Further requests to proceed on appeal *in forma pauperis* should be directed on motion to the United States Court of Appeals for the Second Circuit in accordance with Rule 24 of the Federal Rules of Appellate Procedure.

IT IS SO ORDERED.

Dated: February 11, 2021
    Rochester, New York

CHARLES J. SIRAGUSA
United States District Judge